UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-10017 |
| ) | |
| STEPHANIE HOLLINS, ) | |
| ) | |
| Defendant. ) | |

### ORDER AND OPINION

This matter is now before the Court on Defendant Stephanie Hollins' Amended Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and The Cares Act, Pub. L. No. 116-136 (Mar. 27, 2020). (D. 53). For the reasons stated below, her Motion is DENIED.

### BACKGROUND

From 2012 through 2015, Defendant prepared and filed tax returns for her customers at TTI Tax. (D. 26, p. 4). To achieve greater refunds, she falsely claimed Household Help (HSH) and/or Schedule C income and expenses to increase or maximize the refundable Earned Income Tax Credit (EITC), false Additional Child Tax Credit (ACTC) credits, as well as some refundable education credits. *Id*. Approximately 300 tax returns she filed received refunds, with an average refund of $5,500 per client. *Id*. As a result of the returns, the IRS disbursed $1,527,678.86 in tax refunds. *Id*. at 4-5. A total of $1,065,231.56 was disbursed for adjustments and credits that the individuals were not entitled to receive. *Id*. at 5.

On April 17, 2018, Defendant was charged with fifteen counts of wire fraud, in violation of 18 U.S.C. § 1343. (D. 1). On March 14, 2019, Defendant pled guilty to count two of the indictment pursuant to a written plea agreement and Rule 11(c)(1)(C), which capped her custody

sentence at eighteen months. (D. 17; d/e 3/14/2019). On September 11, 2020, Defendant was sentenced to eighteen months of imprisonment and three years of supervised release and ordered to pay restitution of $1,065,231.56. (D. 33).

On June 21, 2021, Defendant filed a Motion for Compassionate Release. (D. 48). The Court appointed the Federal Public Defender to represent her. (d/e 6/21/2021). On July 30, 2021, counsel filed an Amended Motion for Compassionate Release. (D. 53). On August 3, 2021, the Government filed a Response in opposition to compassionate release. (D. 55). This Order follows.

## LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons (BOP) file a motion on his or her behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after thirty days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1). The Seventh Circuit provided further instruction regarding the proper analysis when evaluating a motion for a discretionary sentencing reduction under § 3582(c)(1)(A) based on "extraordinary and compelling" reasons, which includes two steps. *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021).

> At step one, the prisoner must identify an "extraordinary and compelling" reason warranting a sentence reduction…. Upon a finding that the prisoner has supplied

such a reason, the second step of the analysis requires the district court, in exercising the discretion conferred by the compassionate release statute, to consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner.

*Id.* The Seventh Circuit has also held that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. *United States v. Gunn,* 980 F.3d 1178, 1180 (7th Cir. 2020). This Court is therefore not bound by the Sentencing Commission's analysis in § 1B1.13 or the application notes regarding the definition of "extraordinary and compelling reasons." *Id*. at 1181. Furthermore, even if this Court finds an "extraordinary and compelling" reason to warrant a sentence reduction, it is disinclined to do so unless it determines that a defendant "is not a danger to the safety of any other person or to the community." *See* USSG § 1B1.13(2).

## DISCUSSION

In her Amended Motion, Defendant argues that compassionate release is warranted due to the proliferation of COVID-19 infections and variants at BOP facilities, her underlying health conditions, and because she claims that she should not receive the vaccine due to a recent COVID-19 infection. (D. 53, p. 2). The Government urges the Court to deny the Amended Motion because Defendant failed to present an extraordinary and compelling reason for release and the section 3553(a) sentencing factors do not support a reduced sentence. (D. 55, p. 1).

### I.  Exhaustion of Administrative Remedies

Defendant claims that she filed a request with the warden on May 20, 2021. (D. 53 at 5). The Government concedes that she exhausted her administrative remedies based on the warden's denial of compassionate request on June 25, 2021. (D. 55, pp. 8-9; D. 55-2). As such, the Court finds the exhaustion requirements have been met and will address this matter on the merits.

3

## II. Eligibility for Compassionate Release

### A. FCI Aliceville

Defendant argues that conditions of confinement make it difficult to follow the CDC guidelines and protect herself from the virus. (D. 53, pp. 5-6). She is incarcerated at Federal Correctional Institution (FCI) Aliceville in Aliceville, Alabama. (D. 52, p. 1). Her expected release date is June 1, 2022. *Id.*

As of August 25, 2021, two inmates at FCI Aliceville currently have COVID-19. *Federal Bureau of Prisons, COVID-19 Coronavirus,* https://www.bop.gov/coronavirus/ (last visited 8/25/2021). To date, 122 inmates and seventeen staff members at FCI Aliceville who contracted COVID-19 have fully recovered, and there have been no deaths. *Id.*

The BOP is currently administering vaccines to staff and inmates. There are 968 inmates and 130 staff members at FCI Aliceville who are fully vaccinated. *Id.* With cases down and vaccinations up, it appears that COVID-19 infections are waning in this facility despite the new variants.

### B. Defendant's Medical Conditions

Defendant is forty-six years old and suffers from obesity (BMI 32.88), asthma, bronchitis, anxiety, and depression. (D. 53, pp. 1-2). The CDC recognizes an increased risk of severe illness from the virus among obese adults. *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited 8/25/2021). Additionally, the CDC found that moderate to severe asthma might increase the likelihood of serious illness. *Id.* Accordingly, Defendant argues that the COVID-19 pandemic and her medical conditions constitute extraordinary and compelling reasons for compassionate release.

It appears that Defendant's health conditions are well-managed. (D. 55-3). Specifically, her asthma is controlled by an albuterol inhaler, and she received dietary counseling to help manage her weight. (D. 55, pp. 9-10; D. 55-3, p. 3).

Defendant tested positive for COVID-19 on March 29, 2021. (D. 55, p. 10; D. 55-4, pp. 1-2). She fully recovered and was placed back in the general population after completing a period of isolation. *Id*. Defendant claims that she did not receive the COVID-19 vaccination because she already contracted the virus, and therefore, the vaccine was not recommended. *Id*. at 3. However, her medical records show that she was offered the Pfizer vaccine on June 8, 2021, and she refused the vaccination. (D. 55-3, p. 3) ("immunization not carried out because of patient refusal").

Defendant also argues that she is at a high risk for reinfection without the vaccine, but she presents no evidence for her claims. According to the CDC, cases of reinfection are rare. *See Reinfection with COVID-19*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited 8/25/2021). Based on CDC guidance, it is doubtful that she will contract COVID-19 again or experience serious complications. *See id*.

The Government argues that she failed to present an extraordinary and compelling reason for release because she refused the vaccine. (D. 55, p. 12). This Court agrees. The Court acknowledges that obesity may qualify as an extraordinary condition qualifying an inmate for consideration for compassionate release due to the COVID-19 pandemic, but Defendant's refusal of a vaccine means her health concerns no longer qualify as an extraordinary circumstance. Courts across the country appear to have consistently ruled that an inmate's refusal of a COVID-19 vaccine weighs against a finding of extraordinary and compelling circumstances to justify relief. *See United States v. Lohmeier*, No. 12 CR 1005, 2021 WL 365773, at *2 (N.D. Ill. Feb. 03, 2021)

("In declining vaccination (twice), [Defendant] declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."); *United States v. Williams*, No. CR 1701279001, 2021 WL 321904, at *3 (D. Ariz. Feb. 1, 2021) ("Defendant's own behavior [in refusing vaccination] is inconsistent with his position that he believes he is at increased risk from the virus."); *United States v. Gonzalez Zambrano*, No. 18-CR-2002, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) ("Although defendant has a right to refuse medical treatment, the Court finds that it would be inappropriate to reward her refusal to protect herself by granting her release. It would be paradoxical to endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them."); *United States v. Baeza-Vargas*, 2021 BL 125472, 3 (D. Ariz. Apr. 05, 2021) (collecting cases). Indeed, while Defendant is not obligated to take the vaccine, it is inconsistent for her to both claim fear of risk of contracting the virus while refusing medical treatment that would drastically reduce her risk. Therefore, her Amended Motion is DENIED.

### III.    Section 3553(a) Factors

Even if Defendant had established extraordinary and compelling reasons for compassionate release, a sentence reduction would not be warranted under the section 3553(a) factors. Defendant used her skills as a tax preparer registered with the IRS to engage in a fraudulent scheme involving more than $1 million and spanning at least four years. (D. 26). Her scheme was directed at not only the IRS but the customers for whom she prepared taxes. *Id*. In a written plea agreement under a Rule 11(c)(1)(C), the parties agreed to a sentence of up to eighteen months of imprisonment on count two of the indictment, and the remaining fourteen counts were dismissed. (D. 1; D. 17). Defendant's advisory sentencing guideline range was 33-41 months of imprisonment. (D. 26, p.

15). She received a substantial reduction because of the plea agreement. During her short time in custody, she was disciplined for "Disruptive Conduct-High" on April 16, 2021. (D. 52, p. 1). She has not served even half of her sentence. To further lessen her sentence would fail to reflect the seriousness of her offense, promote respect for the law, or provide adequate deterrence. Therefore, the Court finds that a sentence reduction is not supported by the section 3553(a) factors.

### CONCLUSION

For the reasons stated above, Defendant's Amended Motion for Compassionate Release [53] is DENIED and her *pro se* Motion for Compassionate Release [48] is MOOT.

ENTERED this 26th day of August, 2021.

> s/ Michael M. Mihm
> Michael M. Mihm
> United States District Judge